# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

United States of America )
) Case No. 14 C 2917
v. )
) Judge John Robert Blakey
Sedgwick Johnson )
)

## MEMORANDUM OPINION AND ORDER

On October 24, 2002, a jury found Sedgwick Johnson and his two co-defendants guilty of conspiring to possess with intent to distribute, and possession with intent to distribute, more than 50 grams of crack cocaine and more than 500 grams of powder cocaine. Judge James Holderman, to whom this case was previously assigned, sentenced Johnson to 360 months in prison, followed by five years of supervised release. Pursuant to 28 U.S.C. § 2255, Johnson moves this Court to modify his sentence, arguing that his trial counsel, Daniel Wolff, was constitutionally deficient during plea negotiations. For the reasons explained below, this Court denies Johnson's motion.

## I.    Factual and Procedural Background

On July 26, 2001, a grand jury issued an indictment charging Raymond Cooper, Kalonji McMillian, and Sedgwick Johnson with one count of conspiring to knowingly and intentionally possess with intent to distribute more than 50 grams of a mixture containing cocaine base ("crack cocaine") and more than 500 grams of a mixture containing cocaine ("powder cocaine") in violation of 21 U.S.C. § 846; one

count of knowingly and intentionally possessing with intent to distribute 500 grams of powder cocaine in violation of 28 U.S.C. § 841(a)(1); and one count of knowingly and intentionally possessing with intent to distribute in excess of 50 grams of crack cocaine in violation of 28 U.S.C. § 841(a)(1). *See United States v. Cooper et al.*, 1:01-cr-00543 (N.D. Ill.) at [17]. On October 15, 2002, Cooper, McMillian, and Johnson all proceeded to trial as co-defendants. *United States v. Cooper et al.*, 1:01-cr-00543 at [71]. On October 24, 2002, the jury found all three defendants guilty of all charges. *United States v. Cooper et al.*, 1:01-cr-00543 at [82], [83], [84].

On December 5, 2002, Johnson, through his attorney, Daniel Wolff, moved for a new trial, arguing that the testimony of one of the government's experts, Sergeant Robert Coleman, allowed the jury to draw an "improper inference" that Johnson, the number three defendant, knew he was carrying drugs. *United States v. Cooper et al.*, 1:01-cr-00543 at [89]. Judge Holderman denied Johnson's motion for a new trial on January 30, 2003 and sentenced Johnson to a 360-month term of imprisonment, followed by five years of supervised release. *United States v. Cooper et al.*, 1:01-cr-00543 at [108], [112]. In calculating Johnson's sentence using the Sentencing Guidelines, Judge Holderman relied upon Johnson's status as a "career offender." *United States v. Cooper et al.*, 1:01-cr-00543 at [144] at 11.

Following his sentencing on January 30, 2003, Johnson filed a timely appeal in the Seventh Circuit. *See United States v. Johnson*, No. 03-1322 (7th Cir. May 4, 2005). In his appeal, Johnson again argued that Robert Coleman's testimony allowed the jury to reach an improper inference as to the mental state of drug couriers; he

also argued that comments made during the prosecution's rebuttal were highly prejudicial, that he should have received a reduction in his sentencing for being a minimal participant in the charged activity, and that his sentence was unconstitutional under *United States v. Booker*, 543 U.S. 220 (2005). *Id.* at 2–6.

On appeal, the Seventh Circuit affirmed all three co-defendants' convictions, *United States v. Cooper et al.*, 1:01-cr-00543 [144] at 12, but ordered a limited remand in light of the United States Supreme Court's decision in *Booker,* which held that the sentencing ranges promulgated by the Sentencing Commission were advisory, not mandatory, and that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244.

The Seventh Circuit remanded Cooper's and McMillian's sentences because the drug quantities Judge Holderman relied upon in sentencing these defendants had neither been admitted by the defendants nor found by a jury, thus warranting reconsideration after *Booker*. *United States v. Cooper et al.*, 1:01-cr-00543 at [144] at 10. In Johnson's case, the Seventh Circuit noted that the drug quantity issue was irrelevant, as the district court had sentenced him as a career offender. *United States v. Cooper et al.*, 1:01-cr-00543 at [144] at 11. Still, because the guidelines had been mandatory at the time of his sentencing, the Seventh Circuit ordered a limited remand so Judge Holderman could consider whether he would have sentenced Johnson differently had the guidelines not mandated the sentence. Judge Holderman

advised the Seventh Circuit that he would have imposed the same sentences under 18 U.S.C. §3553, whether the guidelines were mandatory or advisory, and the Seventh Circuit affirmed defendants' sentences on June 1, 2007. *United States v. Cooper et al.*, 1:01-cr-00543 at [160].

Johnson subsequently filed a petition for writ of certiorari to the Supreme Court. The Supreme Court vacated the judgment against him and remanded in light of *Kimbrough v. United States*, 552 U.S. 85 (2007), in which the Court held that district courts could find that the disparity in sentencing between crack cocaine and powder cocaine resulted in a sentence greater than necessary and could impose a lesser sentence on this basis. *See Johnson v. United States*, 552 U.S. 1091 (2008). As a result of the Supreme Court's decision, the Seventh Circuit again remanded Johnson's case, this time to allow Judge Holderman to consider whether Johnson's sentence was "greater than necessary" because of the guidelines' treatment of crack cocaine versus powder cocaine. *United States v. Johnson*, No. 13-1322 (7th Cir. Apr. 26, 2013). Judge Holderman ultimately determined that he would impose the same sentence if the case were remanded for resentencing after *Kimbrough, United States v. Cooper et al.*, 1:01-cr-00543 at [196], and the Seventh Circuit affirmed that decision on October 25, 201, *United States v. Johnson*, 535 F. App'x 534 (7th Cir. 2013).

On April 21, 2014, Johnson filed the instant motion to modify, vacate, or set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, arguing that "his conviction and sentence were imposed in violation of his Sixth Amendment right to effective assistance of counsel." *See* [1]. In particular, Johnson argued that his trial

4

counsel, Daniel Wolff, provided constitutionally deficient assistance in five respects: (1) Wolff failed to investigate and interview Johnson's co-defendants regarding his awareness of the narcotics; (2) Wolff failed to assert a *Bruton* objection to the admission of tape-recorded conversations between Jason Rauner, a government informant, and his co-defendants at trial; (3) Wolff failed to object to the district court's sentencing in light of the government's failure to prove drug quantity beyond a reasonable doubt; (4) Wolff failed to inform Johnson of a plea offer or pursue plea negotiations; and (5) Wolff failed to argue that Johnson was eligible for a four-level reduction at sentencing due to his "minor participant" status. *Id.*

After briefing, Judge Holderman denied Johnson's § 2255 petition on May 28, 2015 without a hearing. [22]. In so doing, Judge Holderman noted that, in the absence of a formal plea offer from the government, Wolff "could not have been ineffective for failing to advise Johnson to accept a nonexistent offer." [22] at 15–16. Johnson then filed a motion to alter or amend the judgment pursuant to Rule 59(e) on June 25, 2015, arguing that Judge Holderman erred by failing to evaluate the appealability of his decision denying Johnson's § 2255 motion. [24]. Johnson also filed a motion for reconsideration on June 29, 2015. [26]. On July 1, 2015, the case was reassigned to this Court when Judge Holderman retired. [25]. Given Judge Holderman's denial of the § 2255 petition and Johnson's failure to offer any new evidence or arguments, on July 7, 2015, this Court denied both the Rule 59(e) motion and the motion to reconsider. [27].

Johnson appealed, [28], and the Seventh Circuit determined that Johnson had made a substantial showing of the denial of his right to effective counsel during plea negotiations, appointed counsel for Johnson, and directed the parties to address whether counsel could be constitutionally ineffective for actions taken during informal plea negotiations. *Johnson v. United States*, No. 15-2896 (7th Cir. Orders dated Mar. 31, 2016 and Apr. 8, 2016). After partially briefing the issue, the parties determined that evidentiary issues existed concerning Johnson's claim relating to plea negotiations and that an evidentiary hearing was, therefore, necessary. Accordingly, on November 15, 2016, they filed a joint motion to remand for an evidentiary hearing, *Johnson v. United States*, No. 15-2896 (7th Cir. Nov. 15, 2016), and the Seventh Circuit granted the motion, remanding the case for an evidentiary hearing concerning the effectiveness of Johnson's counsel during plea negotiations, *Johnson v. United States*, No. 15-2896 (7th Cir. Nov. 22, 2016).

At the parties' request, this Court gave them an opportunity to brief the relevant issues on remand and then held an evidentiary hearing. *See* [51], [55], [58]. At the hearing, the Court heard from both Johnson and Wolff. *See* [70]. At the close of the evidentiary hearing, Johnson's counsel asked the Court to hold open the record so that he could have time to gather further information from the probation department, and this Court granted that request. [70] at 10. Thereafter, the parties filed several stipulations, [72], [80], [83], [84], [91], and Johnson moved to admit additional exhibits (the aforementioned probation documents, [82], and certain standards and practices treatises, [74], [86]). Johnson ultimately filed his post-

hearing brief on April 18, 2018, [89], and the government filed its response on May 18, 2018, [90]. Johnson subsequently filed his post-hearing reply in support of his § 2255 motion on August 1, 2018, [96], and the Court closed the record without objection. [97].

Following the close of the evidentiary record in his § 2255 case, on March 13, 2019, Johnson filed a motion for a reduced sentence under Section 404 of the First Step Act in his criminal case. *United States v. Cooper et al.*, 1:01-cr-00543 at [237]. After briefing, on June 24, 2019, Judge Leinenweber granted Johnson's motion and reduced his sentence from 360 months to 262 months. *United States v. Cooper et al.*, 1:01-cr-00543 at [248]. As of June 24, 2019, the date of the amended sentencing order, Johnson had served 216 months and thus had 46 months remaining on his sentence. Because he has time remaining, his § 2255 motion remains viable.

## II. Legal Standard

As the Seventh Circuit has noted, "motions to vacate a sentence or conviction ask the district court to grant an extraordinary remedy to one who already has had an opportunity for full process." *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)). Under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting

28 U.S.C. § 2255).  A § 2255 motion is not a substitute for a direct criminal appeal.  *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

## III.  Discussion

In his pre-hearing brief before this Court, Johnson argues that his trial counsel, Daniel Wolff, provided ineffective assistance because he failed to calculate Johnson's Guidelines range; failed to investigate Johnson's status as a career offender; failed to explain the Guidelines to Johnson and relatedly failed to advise Johnson that the Guidelines were mandatory; failed to fully explore or discuss with Johnson or the government the possibility of Johnson pleading guilty or otherwise cooperating; and failed to explain the impact a plea or cooperation could have on Johnson's Guidelines range.  *See* [51] at 2.  Johnson also contends that Wolff advised him he could not be convicted at trial if his co-defendants did not testify against him, and as a result of that advice and his lack of understanding of the federal Sentencing Guidelines, he chose not to pursue or accept a plea.  *Id.*

As discussed below, the record in this case—which consists of the parties' stipulations and the admitted exhibits,[1] Johnson's testimony from the evidentiary hearing, and Wolff's testimony from the evidentiary hearing, as well as the parties' pre- and post-hearing briefs—shows that none of Johnson's allegations are true, and the Court accordingly finds that Johnson's counsel was not ineffective.

---

[1] Johnson filed three motions regarding exhibits.  The first motion, [82], seeks admission of exhibits labeled PX63 through PX75, which are U.S. probation documents. The government stipulates to the authenticity of these documents but objects to their admission in the record.  This Court grants Johnson's motion over the government's objection.  The other two motions, [74] and [86], seek admission of materials relating to attorney standards and practices (contained in PX45–46, 51–52, and 76–77).  The Court denies these motions but, to the degree the content of such exhibits matters, this Court can take judicial notice of the relevant published standards and practices.

### A.     <u>Johnson's Burden Under *Strickland*</u>

For a criminal defendant to succeed in showing that his counsel was ineffective, he must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that his counsel's performance was deficient– *i.e.*, that it "fell below an objective standard of reasonableness" when measured against "prevailing professional norms"; this is the "performance prong." *Id.* at 687– 88. When considering counsel's performance, courts employ a "highly deferential" analysis and a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011).

After making a showing on the performance prong, the defendant must then demonstrate that his counsel's "deficient performance prejudiced" him "so as to deprive the defendant of a fair trial" (the "prejudice prong"). *Strickland*, 466 U.S. at 669. To demonstrate prejudice in the plea bargaining process, a defendant must demonstrate that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court," that the court "would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that was in fact imposed." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

### B.     *Strickland*'s Performance Prong

Johnson alleges inadequate performance under *Strickland* because Wolff failed to investigate Johnson's criminal history, accurately calculate Johnson's

applicable guidelines, or adequately explain Johnson's sentencing exposure; he also argues that Wolff failed to explain how pleading guilty or otherwise cooperating with the government could have lessen his exposure. [89] at 3–4, 19–46.

### 1. Counsel's Performance in Investigating Johnson's Criminal History and Calculating Johnson's Guidelines Range

The parties offer starkly different versions of Wolff's investigation of Johnson's criminal history. Johnson alleges that Wolff never concluded that Johnson was in fact a "career offender" for sentencing purposes, and, even if he did make that determination, he failed to confirm that conclusion through subsequent investigation of Johnson's criminal history. [89] at 21–37. Johnson asserts that Wolff did not have enough information to determine that Johnson constituted a career offender, and that he did no further research to determine whether Johnson did fall into that category. *Id.* at 26. The government, by contrast, alleges that Wolff correctly calculated Johnson's guidelines information and that, once he had done so, he had no further obligation to investigate Johnson's criminal history. [90] at 12–13.

In determining whether counsel adequately investigated criminal history to determine a defendant's sentencing exposure, "the salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence." *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006); *see also United States v. Cieslowski*, 410 F.3d 353, 356 (7th Cir. 2005) ("As applied in the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence."). Even

if counsel does not reach the correct conclusion as to what a sentence will be, "an inaccurate prediction of a sentence alone is not enough to meet [*Strickland's*] standard." *Bethel*, 458 F.3d at 717 (citations omitted). Indeed, such common-place occurrences rarely undermine the constitutional fairness of a criminal proceeding.

True, counsel in every criminal case has "a duty to make reasonable investigations," *Strickland*, 466 U.S. at 691, and this duty includes an "obligation to conduct a thorough investigation of the defendant's background." *Williams v. Taylor*, 529 U.S. 362, 396 (2000). In this case, however, the record demonstrates that Wolff satisfied this duty and obligation.

Contrary to Johnson's assertions, Wolff testified credibly about his able performance on Johnson's behalf. Wolff testified that he asked Johnson about his criminal history during their initial meeting at the Metropolitan Correctional Center and that Johnson told him he had several prior convictions, including a narcotics distribution charge and a home invasion charge. [70] at 131–32. Johnson conceded that he told Wolff about his criminal history. *Id.* at 77–78. Likewise, Wolff's notes from his initial meeting with Johnson (PX 14) reflect Johnson's recitation of multiple prior convictions including a narcotics charge (indicated as "9 yrs PCS w/int"); a prior home invasion and armed robbery (indicated as "prior home invasion 10 yrs"); and a second armed robbery charge (which Wolff testified was represented by the "ditto marks" under the first home invasion). [70] at 131–33; *see also* PX 14.

 Moreover, Wolff testified that, after his initial meeting with Johnson, based upon what Johnson told him about his criminal history, Wolff thought "it was very,

very probable that [Johnson] would be a career offender." [71] at 255; *see also* [70] at 137. Wolff further testified that, based upon Johnson's recitation of his criminal history, the discovery he received from the government, and the pretrial services report (both of which corroborated Johnson's recitation and confirmed that Johnson had numerous prior criminal convictions, at least two of which qualified as predicate offenses for purposes of the "career offender" designation), he confirmed that Johnson would be treated as a career offender for sentencing purposes. [71] at 6–7, 13, 102–03, 105.

Wolff testified that he did not calculate Johnson's guidelines in writing, and he conceded that, in some cases, it may be helpful to calculate a client's guidelines in writing. *Id.* at 29. But he also testified that, in Johnson's case, once he knew Johnson qualified as a career offender, it was "a very simple calculation to figure out what the sentence" would be; he testified "it doesn't require any adding, any subtracting. It's very – it's a very straightforward and simple calculation." *Id.* at 29–30. Given Wolff's extensive experience as a criminal attorney practicing in both the state and federal systems,[2] and given the factual record presented here, Wolff's conduct was both reasonable and constitutionally effective.

In arguing otherwise, Johnson cites a 2001 criminal defense treatise noting that "many clients are unaware of the specifics of their criminal histories and are not

---

[2] Wolff testified that he has worked for over 50 years as a criminal attorney, starting out in the Cook County State's Attorney's Office, then partnering with former Assistant United States Attorneys to form a criminal defense firm, then working on his own, always as a criminal defense attorney. [70] at 114–15. He testified that he has handled hundreds of criminal trials in state court and more than 30 criminal trials in federal court. *Id.* at 115–18. Additionally, Wolff has handled many federal criminal matters that were resolved short of trial, either through dismissal or plea. *Id.* at 119.

reliable sources for this information." [89] at 28–29; *see also* [96] at 8 (citing to an ABA standard which notes that defense counsel should investigate "the facts that go to the defendant's potential sentence, including his or her prior record"). But Wolff did not simply rely upon Johnson's recitation alone: rather, Wolff also reviewed a pretrial services report (PX 15), [71] at 257, which indicated that Johnson had been convicted of possession of a controlled substance, home invasion/armed robbery, and residential burglary, *id.* at 258–60. And Wolff also reviewed discovery he received from the government, which also corroborated Johnson's recitation and showed that Johnson had numerous prior criminal convictions including at least two predicate offenses supporting the career offender label. *See id.* at 261–62; PX 21. Wolff testified that, based upon all of this information, he determined that Johnson qualified as a career offender and that his sentencing exposure landed "in the 30-to-life range." [71] at 264.

Johnson argues that the sources Wolff considered—Johnson's account of his own criminal history, the pretrial services report, and the government's discovery—would not have allowed Wolff to conclude that Johnson qualified as a career offender; in Johnson's view, Wolff was obligated to investigate further. [89] at 35. To support this assertion, he cites caselaw and certain standards and practices sources. *See id.* at 31–32. Yet the authority he cites is inapposite. For example, in *Raygoza v. Hulick*, 474 F.3d 958, 964 (7th Cir. 2007), the Seventh Circuit held that a defendant's trial counsel was constitutionally defective for his complete failure to investigate his client's alibi defense in a first-degree murder case. Significantly, in *Raygoza*, counsel

13

failed to investigate the alibi witnesses at all. *Id.* But here, Wolff did investigate: he heard information from Johnson himself indicating that Johnson qualified as a career offender, and he then reviewed information from pretrial services and from the government, which corroborated Johnson's recitation and confirmed that Johnson's criminal history included numerous prior offenses and at least two (and possibly more than two) convictions that would qualify as predicate offenses for purposes of the career offender designation. Based upon this information, Wolff reasonably determined that Johnson qualified as a career offender, and the Constitution did not require anything further in terms of investigation.

The additional caselaw Johnson supplies similarly attempts to fit a square peg into a round hole: all involve a defense attorney who utterly failed to investigate or properly prepare in light of the context of the case at hand. *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 524, 531 (2003) (finding that counsel's failure to commission a public history report in a capital murder case was constitutionally deficient when he had only a "rudimentary" knowledge of his client's background). Given that the record in this case indicates that Wolff reasonably concluded Johnson qualified as a career offender based on multiple sources of information, he was not constitutionally obliged to do more. *See Strickland*, 466 U.S. at 680 (noting that investigations "need not be exhaustive"); *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996) ("If a decision not to mount an all-out investigation . . . [is] supported by reasonable professional judgment it is not ineffective assistance.") (citation omitted).

Johnson argues that Sentencing Guideline "calculations are complicated" and, as a result, "it is difficult to imagine how competent and effective counsel can perform (and thereafter remember) such calculations without putting pen to paper." [89] at 33. He concludes, therefore, that the lack of written calculations in the record indicates that Wolff never actually determined Johnson's sentencing exposure, and that Wolff's failure to write down calculations was, by prevailing professional norms, constitutionally deficient. *Id.*; *see also* [96] at 14. By contrast, the government argues that calculating Johnson's sentencing exposure was "simple" and did not require Wolff to perform complex calculations to determine what kind of sentence Johnson was facing. [90] at 12.

Despite Johnson's assertions, not all guideline calculations are complex, and the constitution does not impose a special "writing" requirement upon them. As the Seventh Circuit has noted, both federal appellate courts and the Supreme Court are "hesitant to find ineffective counsel in situations short of conspicuous failings." *Galbraith v. United States*, 313 F.3d 1001, 1008 n.4 (7th Cir. 2002); *see also Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) ("The central analysis is not whether counsel's conduct deviated from best practices . . . but instead, whether an attorney's representation amounted to incompetence under prevailing professional norms.") (citations omitted). The question here then becomes whether Wolff's failure to write down the calculations that lead him to conclude Johnson was a career offender was in fact a "conspicuous failing."

As explained above, Wolff testified that he believed Johnson had, at a minimum, two predicate offenses that would qualify him as a career offender. [70] at 131–32. No one disputes that Johnson's criminal history, in fact, included such offenses. This information allowed Wolff to conclude that Johnson qualified as a career offender, and, once he reached that conclusion, the process to determine Johnson's sentencing exposure became straightforward. As Wolff testified, the guidelines at the time stated "all career offenders are Category IVs and 360 to life pops out. I wouldn't have to write that out unfortunately." [71] at 251.

Johnson argues that prevailing professional norms required Wolff to write down his calculations to memorialize them, even if he did figure out Johnson's career offender status in his head. *See* [89] at 33 (citing a legal malpractice treatise stating that "critical information should be in writing"). Johnson also cites to a lack of clarity about some of his prior convictions, including the fact that his 1990 convictions were "related" and thus merged in terms of determining his career offender status, that his 1994 convictions were similarly merged, and that his 1985 charge had been reduced to a burglary charge. [89] at 36. Yet such calculations and considerations were unnecessary—Johnson had committed, at a minimum, two clearly separate predicate offenses that qualified him for career offender status, and Wolff was aware of these predicate offenses and made the conclusion that Johnson was a career offender. The record demonstrates that Wolff could and did come to this conclusion, and, given the "presumption than an attorney's conduct is reasonably proficient," Wolff's failure to write down his determination that Johnson was a career offender

does not render his performance constitutionally deficient. *Galbraith,* 313 F.3d at 1008.

### 2. Counsel's Performance in Advising Johnson Concerning Cooperation or a Potential Plea

In addition to arguing ineffective assistance in Wolff's investigation and calculation of Johnson's guidelines, Johnson also argues ineffective assistance because Wolff allegedly failed to properly communicate with Johnson about his sentencing exposure and the possibility that he could reduce his exposure by cooperating or pleading guilty; relatedly, Johnson alleges that Wolff failed to advise him properly during plea negotiations. [89] at 38–41. Johnson alleges that Wolff failed to keep him "reasonably informed" about the status of his case, failed to give him the essential information about his career offender status, and, to the extent Wolff did tell him about his sentencing exposure, he failed to follow up with a written confirmation. *Id.; see also* [96] at 22–23.

The government, by contrast, alleges that "Wolff advised Johnson that he qualified under the guidelines as a career offender, that he was facing a prison term of 30 years to life, that he could receive a lesser sentence of 22 years if he entered a guilty plea, and that he could receive as much as 50% [less time] if he were willing to cooperate with the government." [90] at 20.

In determining the competence of counsel during plea negotiations, a "reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Brock-Miller v.*

*United States*, 887 F.3d 298, 308 (7th Cir. 2018) (citations omitted). A defendant's counsel has an obligation to "provide good-faith advice about the consequences of a sentencing plea." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996).

At the evidentiary hearing, Johnson testified that he and Wolff did not discuss the potential sentence he could receive if he lost at trial; he also testified that Wolff told him he could face ten to thirteen years. [70] at 32–33. Wolff, on the other hand, testified that he informed Johnson more than once that he qualified as a career offender and likely faced thirty years to life in prison. [71] at 199–201. Wolff further testified that he informed Johnson of both the statutory maximum (life in prison) and the statutory minimum (ten years) and advised him that he was likely to get, at the very least, twenty years given his prior drug conviction. *Id.* at 249.

Based upon the record, Wolff's version of the facts remains credible and Johnson's does not. Indeed, even though Johnson claimed at one point in the hearing that Wolff told him he was facing 10 to 13 years, he later admitted under oath that Wolff told him he was facing "almost a life sentence." [70] at 37. Johnson also admitted that, at his initial appearance in June of 2001, he was advised of the charges against him and advised that the conspiracy charge (count 1) carried a statutory maximum of life in prison. [70] at 83. He also admitted that the agents who arrested him told him he was facing 30 years to life if convicted. *Id.* at 87–88. And he admitted that he knew from the beginning that he qualified for a higher sentence because of his prior convictions. *Id.* at 90. At the hearing, Johnson also admitted on cross examination that he knew the government offered him an opportunity to cooperate,

and that he elected not to exercise that option; he further testified that he never even asked Wolff about the possibility of cooperating. *Id.* at 98–99.

Such admissions by Johnson jibe with Wolff's credible testimony that Johnson did not want to cooperate and did not even want him to discuss a plea or potential cooperation with the government, and that Johnson was insulted at the mere prospect of cooperating against his co-defendants. [71] at 14–15, 47–49. In fact, Wolff testified that he talked to Johnson about cooperating on a number of occasions—when Johnson first told him his version of what had transpired between him and his co-defendants; and then again as Wolff went through the government's discovery and realized that what Johnson had told him was "not even close to the truth" and that the government had a strong case against Johnson. *Id.* at 47. Wolff also testified that he advised Johnson, who Wolff believed to be the "number three defendant," that he could cut his exposure in half if he cooperated against co-defendant Cooper or if he had some other information that the government did not yet know. *Id.* at 48. Wolff also testified credibly that he told Johnson he could save himself eight years by pleading guilty, but Johnson did not want to hear it; Wolff testified that Johnson made it clear that he would plead guilty only if the AUSA would agree to give him only "a couple of years," and that was not possible. *Id.* at 48–49. Based on their meetings, Wolff testified that he believed Johnson fully understood the federal Sentencing Guidelines, including the impact of the career offender provision, when Johnson elected to go to trial; Wolff testified that Johnson was "dead set" on going to trial, that Johnson believed the government could not prove a case against him, and

that he refused to listen to his attorney's attempts to tell him how it could. *Id.* at 59–60. Having had the opportunity to gauge Wolff's and Johnson's credibility first-hand, the Court accepts Wolff's testimony and finds that Wolff's performance with respect to communicating with his client satisfied *Strickland*.

## C. *Strickland*'s Prejudice Prong

Under *Strickland*, once a movant satisfies the performance prong, he must still meet the prejudice prong standard, which, in the plea bargaining context, requires him to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Spiller v. United States*, 855 F.3d 751, 755 (7th Cir. 2017). The "reasonable probability" requirement is a low standard, one which "need only be better than negligible." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). Still, as the Seventh Circuit has noted, "a mere allegation by the defendant that he would have insisted upon going to trial" (or in this case, plead guilty), "is not sufficient to establish prejudice." *Bethel,* 458 F.3d at 718.

Because Johnson cannot satisfy his burden of demonstrating that counsel's performance fell short under *Strickland*, this Court need not reach the question of whether Johnson could satisfy his burden to demonstrate resulting prejudice. The Court notes, however, that he fails on this prong as well.

Johnson claims that counsel's deficient performance prejudiced him, and that if Wolff had only explained things better, he would have pled guilty and received a lesser sentence. [70] at 38. With regard to a potential guilty plea, the parties

stipulated that, had Johnson "expressed interest in a plea agreement prior to his conviction in [the criminal case], there was a reasonable probability that the government would have extended to Johnson either an informal and non-binding written plea offer, or a formal written plea offer that had been reviewed and approved by the U.S. Attorney or the U.S. Attorney's authorized designee, in which offer the government would have agreed to dismiss Counts Two and Three of the Indictment in exchange for Johnson, among other things, (1) pleading guilty to Count One of the Indictment, (2) fully accepting responsibility for his role in the charged drug distribution conspiracy in a detailed factual basis, and (3) agreeing to an applicable sentencing guidelines calculation." [72] at ¶ 1. Johnson and the government further stipulated that the government "never prepared a written plea offer or proposed plea agreement." *Id.* at ¶ 2. The prosecutor handling the case, Victoria Peters, did not recall having any plea discussions or offering any plea or proposed plea in this case, but conceded that informal discussions on the issue may have occurred; she simply did not recall. *Id.* at ¶ 5. Peters' statement parallels Wolff's testimony that he had "very informal plea discussions" with the prosecutor so he could bring something to his client; Wolff testified that he urged Johnson to cooperate or plead guilty, but Johnson refused and that Johnson refused to consider a guilty plea despite the potential reduction in his sentencing exposure. [71] at 109–11.

Significantly, the parties' stipulation says nothing about whether, if offered the described plea, Johnson would have accepted the deal. But based upon the facts here, the record confirms that Johnson would not have signed off on any deal that required

him to accept responsibility for his role in the charged offense (a necessary predicate to any plea deal, even under the parties' stipulation). Indeed, to this very day, Johnson steadfastly continues to maintain his innocence, and he has declined to accept responsibility at every stage of these proceedings, including at the evidentiary hearing on the instant motion.

Given that Johnson repeatedly asserted his innocence throughout the trial, sentencing, and even at the evidentiary hearing, Johnson's assertion that he would have accepted the potential plea agreement and pled guilty rings hollow. And, as explained above, Wolff's credible testimony undermines Johnson's claim that Wolff failed to adequately advise him about his sentencing exposure and the actions he could take to lessen his exposure. Based on the record, Johnson cannot show prejudice.

## III. Conclusion

For the foregoing reasons, this Court denies Johnson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Dated: April 13, 2020

Entered:

John Robert Blakey
United States District Judge